1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RUBBER STAMP MANAGEMENT,
INCORPORATED,

              Plaintiff,

       v.

KALMBACH PUBLISHING COMPANY,

             Defendant.

CASE NO. C06-0277RSM

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT

     This matter comes before the Court for consideration of defendant's motion for summary judgment. Dkt. # 28. Plaintiff has opposed the motion. The Court has fully considered the parties' memoranda and exhibits and, for the reasons set forth below, shall grant the motion.

## BACKGROUND

     Plaintiff, Rubber Stamp Management, Inc. ("RSM"), filed this action against defendant Kalmbach Publishing Company ("Kalmbach"), alleging claims of trademark infringement under common law; false designation of origin, false representation, and false advertising in violation of 15 U.S.C. § 1125(a); federal trademark dilution in violation of 15 U.S.C. § 1125(c); and unfair competition and unfair business practice in violation of state law, RCW 19.86.010 *et seq.* Shortly after filing the complaint, plaintiff moved for a preliminary injunction, asking the Court to enjoin defendant from using a purple arch design in association with the advertising and sale of defendant's craft-related publications. The motion for a preliminary injunction was denied. Dkt. # 23.

ORDER GRANTING MOTION FOR PARTIAL
SUMMARY JUDGMENT - 1

1    Defendant now moves for summary judgment on the false designation of origin and federal

2    trademark dilution claims brought under 15 U.S.C. § 1125.[1]

3                              **FACTUAL BACKGROUND**

4         RSM has used a purple arch mark in association with its craft products since 2001.

5    Complaint, ¶ 8.   Specifically, the purple arch is used in relation to instructional craft publications,

6    art stamps, card-making supplies, and scrap-booking products.   Since January 2002, RSM has sold

7    beads and related beading products on RSM's website, using the purple arch mark.   The purple arch

8    appears with the registered logo, "Addicted To Rubber Stamps," together with the cartoon image

9    of a happy woman jumping enthusiastically with a rubber stamp held in each hand, placed in the

10   center of the arch.  Only the purple arch in the background of these two other marks is at issue in

11   this case.

12        Defendant Kalmbach produces magazines, books and websites covering hobby, special-

13   interest and leisure-time subjects.   Customers can order publications and catalogs through

14   Kalmbach's website. In addition to craft-related magazines, Kalmbach publishes its Easy-Does-it-

15   Series Booklets, on the subjects of card-making, crocheting, decorating, embellishing, embroidery,

16   and scrap-booking with beads.   Appearing as a header on the title page of each of these booklets in

17   the series is an arch, which many be in any of several different colors, one of which is purple.   The

18   various colors for the arch and background are chosen to complement the booklets' subjects.

19   Kalmbach has used an arch as part of the cover design since August 2002.

20        Plaintiff first became aware of defendant's use of the purple arch in December 2005.   RSM

21   notified defendant of its rights in the purple arch mark and trademark infringement concerns.   Soon

22   afterward, in January 2006, RSM filed a trademark application for the particular shade of purple

23   used in its advertisements and website.   RSM described the mark in its trademark application as

24   _____

25        [1]Defendant's motion asks, at the last page, for dismissal of plaintiff's complaint in its entirety.
26   Motion for Summary Judgment, p. 19.   However, the motion itself addresses only plaintiff's federal
     trademark- related claims under 15 U.S.C. § 1125(a) and (c).  Nowhere in the motion has defendant
27   asserted argument regarding plaintiff's state law claim of unfair competition and unfair business practice,
     nor plaintiff's common law trademark infringement claim under Washington law.  Therefore, the Court
28   has treated the motion as one for partial summary judgment.

1   "consist[ing] of the color "purple" used on mailing labels, websites, logos, letterhead, and printed

2   promotional or advertising materials and digital facsimiles thereof."  Dkt. # 28, Exhibit A.  On July

3   10, 2006, the United States Patent and Trademark Office ("USPTO") declined to register plaintiff's

4   purple color mark.   Dkt. # 28, Exhibit B.   Defendant now moves for summary judgment on the

5   basis that plaintiff does not have a protected or protectable trademark in the color purple used in the

6   arch, and therefore no claim for false designation of origin, false representation, false advertising, or

7   federal trademark dilution.

8                                            **DISCUSSION**

9          The Lanham Act provides for the registration of trademarks, which are defined in the statute

10  as "any word, name, symbol, or device, or any combination thereof—[used or intended to be used

11  by a person] to identify and distinguish his or her goods . . . from those manufactured or sold by

12  others and to indicate the source of the goods . . . "  15 U.S.C. § 1127.   In addition to protecting

13  registered marks, the Lanham Act provides, in § 43(a),  a cause of action against anyone who

14  without consent uses any mark which is likely to cause confusion as to the origin, sponsorship or

15  approval of certain goods by another person.  15 U.S.C. § 1125(a).   It is this provision that forms

16  the statutory basis for plaintiff's federal claims.

17         The text of § 43 itself provides "little guidance as to the circumstances under which

18  unregistered trade dress may be protected."  *Wal-Mart Stores, Inc., v. Samara Brothers, Inc.*, 529

19  U.S. 205, 210 (2000).  It does require that the plaintiff demonstrate that the allegedly infringing

20  feature is not functional, and is likely to cause confusion with the product for which protection is

21  sought.  *Id.*, *citing* § 43(A)(1)(a), 15 U.S.C. § 1125(a)(1)(A).  This Court determined previously

22  that the purple mark here is not functional.  Order Denying Preliminary Injunction, p. 4.  The Court

23  there noted that the purple mark "may be protectable if it is also distinctive." *Id*.

24         The requirement that a mark be distinctive does not appear in § 43, but it has been

25  "universally imposed" by the courts.  *Wal-Mart Stores, Inc.* at 210.  The requirement is necessary

26  because without distinctiveness of the trade dress, it would not "cause confusion" as to the origin of

27  the goods as required by the statute.  *Id*.  Further,

28
ORDER GRANTING MOTION FOR PARTIAL
SUMMARY JUDGMENT - 3

1

2

Distinctiveness is, moreover, an explicit prerequisite for registration of trade dress under § 2, and "the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a).

3

4

*Id.*; *quoting Two Pesos, Inc., v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

5

In evaluating the distinctiveness of a mark under § 43(a), the court may find a mark

6

distinctive in one of two ways.  First, a mark is inherently distinctive if by its intrinsic nature it

7

identifies a particular source.  Second, even if it is not inherently distinctive, a mark may acquire

8

distinctiveness by developing a secondary meaning, which occurs when "in the minds of the public,

9

the primary significance of a [mark] is to identify the source of the product rather than the product

10

itself."  *Id.*, *quoting Inwood Laboratories, Inc., v. Ives Laboratories, Inc.*, 456 U.S. 844, 851

11

(1982).

12

 A color mark can never be inherently distinctive.  *Id.*  at 211, *citing Qualitex Co. v. Jacobson*

13

*Products Co.*, 514 U.S. 159, 162-63 (1995).   However, a color may acquire secondary meaning if,

14

over time, customers come to treat that particular color on a product or its packaging as signifying

15

a particular brand.  *Id.* at 212.

16

The Court earlier found that plaintiff's purple arch mark is weak in distinctiveness, and that

17

it does not create a distinct impression separate from the smiling woman and words "Addicted to

18

Rubber Stamps."   Order Denying Preliminary Injunction, p. 7.  The Court then turned to evaluate

19

whether plaintiff had demonstrated that the purple arch mark had acquired secondary meaning, and

20

found that plaintiff had at that stage of the proceedings failed to establish secondary meaning.  *Id.*,

21

p. 8.  In opposing defendant's motion for summary judgment, the burden is now on plaintiff to

22

bring forth evidence that the purple arch has acquired distinctiveness in the minds of consumers.

23

Secondary meaning is established when the purchasing public associates the mark with one

24

particular producer or source, rather than just the product itself.  *Inwood Laboratories.*, 456 U.S. at

25

851 n.11.  Factors to be considered in determining secondary meaning include: (1) whether actual

26

purchasers of the product associate the mark with the producer;  (2) the degree and manner of

27

advertising under the mark;  (3) the length and manner of use of the mark; and (4)  whether RSM's

28

use has been exclusive.  *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F. 2d 1352, 1358 (9th Cir. 1985)

ORDER GRANTING MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4

1   (en banc) ("*Levi-Strauss* factors").

2         In the earlier motion for a preliminary injunction, plaintiff submitted evidence, by way of the

3   declaration of the president of RSM, stating that the purple arch mark has been used "as the key

4   visual feature in our print advertisements, internet advertisements, email newsletters, television

5   advertisements, packaging, invoices and packing slips, business cards, and company letterhead since

6   [2001]."  Declaration of David Kovanen, ¶ 10.  Mr. Kovanen then asserted that "RSM has invested

7   in excess of $500,000 in magazine advertisements that prominently feature its purpose arch mark."

8   *Id.*, ¶ 15.  Examples of such advertising were attached to the declaration at Exhibit H.  Further, Mr.

9   Kovanen stated,

10      16.  RSM has substantially invested in television advertisements prominently featuring
    its purple arch mark.  These ads have aired on Home & Garden TV and other national
11  networks.

12      17.  RSM has sent approximately 10 million email newsletters displaying the purple arch
    mark as the newsletter's dominant feature to mailing list members, all of whom self-
13  subscribe to the list.

14      18.  RSM has shipped in excess of 200,000 packages from our facility bearing its purple
    arch mark.  We have invested approximately $20,000 in the design and production of
15  packaging and labeling featuring the mark.

16      19.  RSM has purchased millions of internet banner advertisements displaying the purple
    arch mark and has also purchased various "newsletter blasts," i.e., advertisements in
17  newsletters published by other companies.

18  *Id.*, ¶¶ 16-19.

19        Plaintiff argues that these facts, when viewed in the light most favorable to RSM, create a

20  triable issue for the jury as to whether RSM's purple mark has acquired distinctiveness.  However,

21  these facts are relevant to only two of the four *Levi-Strauss* factors, set forth above, which must be

22  considered in determining whether a claimant has proved secondary meaning, namely elements (2)

23  and (3).  Notably absent are any facts demonstrating consumer identification or association of this

24  purple arch mark with RSM's products, necessary to demonstrate element (1) of the *Levi Strauss*

25  factors.  Nor do any of the exhibits provided invite the consumer to make that association.

26  Declaration of David Kovanen, Exhibit H.

27        The true test of secondary meaning is the effectiveness of the effort to create the association

28  ORDER GRANTING MOTION FOR PARTIAL
    SUMMARY JUDGMENT - 5

1    between mark and product in the consumer's mind.  *First Brands Corp. v. Fred Meyer, Inc.,* 809

2    F.2d 1378, 1383 (9th Cir. 1987).   This is the first and most important of the *Levi-Strauss* factors.

3    Thus, a large expenditure of money in advertising does not, of itself, create legally protectable

4    rights.  *Id.*, *citing Carter-Wallace, Inc., v. Procter & Gamble Co.,* 434 F. 2d 794, 800 (9th Cir.

5    1970).  The courts have found a failure to establish secondary meaning where a company's

6    advertising campaign did not specifically stress the color and shape of the mark, or otherwise

7    attempt to engender consumer identification between the mark and the product.  *Id.*  On the other

8    hand, in *Application of Hehr Manufacturing Company*, 279 F.2d 526 (C.C.P.A. 1960), the court

9    held that a square red label used as a background for lettering was registrable as a trademark only

10   after the company went to great effort to point customers to the red square label with advertisement

11   phrases such as, "Always look for the Red Sticker," and "Look for these red stickers, they are your

12   guide to quality."  Having found that the red square was not inherently distinctive, the court relied

13   on the company's other efforts to gain secondary meaning and acquire the distinctiveness required

14   for protection. *Id.*

15        Secondary meaning is a question of fact.  *Yellow Cab. Co. of Sacramento v. Yellow Cab of*

16   *Elk Grove, Inc.*, 419 F 3d 925, 930 (9th Cir. 2005); *citing Levi-Strauss & Co. v. Blue Bell, Inc.*,

17   778 F. 2d at 1355.   Plaintiff argues that this rule means that summary judgment must be denied so

18   that the question can go to the jury.  However, plaintiff must first put forth evidence which would

19   create a triable issue of fact as to the question of secondary meaning.  While plaintiff has presented

20   evidence of its advertising campaign and expenditures, nowhere is there any evidence of the

21   consumers' actual association of the purple arch with RSM's product, or even of an effort to direct

22   the consumer to make that association by saying, "look for the purple arch."  Thus, no matter how

23   favorable the light in which the Court views plaintiff's advertising evidence, no triable issue of fact

24   on the question of secondary meaning can be found because plaintiff's evidence on a crucial element

25   is lacking.

26                                    **CONCLUSION**

27        Summary judgment is not warranted if a material issue of fact exists for trial.  *Warren v.*

28   ORDER GRANTING MOTION FOR PARTIAL
     SUMMARY JUDGMENT - 6

1   *City of Carlsbad*, 58 F. 3d 439, 441 (9th Cir. 1995); *cert. denied*, 516 U.S. 1171 (1996).  The

2   underlying facts are viewed in the light most favorable to the party opposing the motion.

3   *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Summary

4   judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the

5   nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving

6   for summary judgment has the burden to show initially the absence of a genuine issue concerning

7   any material fact.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159 (1970).   However, once the

8   moving party has met its initial burden, the burden shifts to the nonmoving party to establish the

9   existence of an issue of fact regarding an element essential to that party's case, and on which that

10  party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

11  To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have

12  evidence showing that there is a genuine issue for trial.  *Id.* at 324.

13         Here, plaintiff has not met its burden of pointing to evidence that would create a triable

14  issue of fact on the question of secondary meaning of the purple arch mark.  Without secondary

15  meaning, the mark lacks the distinctiveness required for protection under § 43 of the Lanham Act,

16  15 U.S.C. § 1125(a).   In the absence of distinctiveness of the mark, it cannot  "cause confusion" as

17  to the origin of the goods as required by the statute.[2]   *Wal-Mart Stores, Inc.* at 210.

18         Accordingly, defendant's motion for partial summary judgment is GRANTED, and

19  plaintiff's federal claims under the Lanham Act, Counts One and Two in the complaint, are hereby

20  DISMISSED.

21  /

22  /

23  /

24

25         [2]In the earlier Order denying plaintiff's motion for a preliminary injunction, the Court analyzed the
    likelihood of confusion with defendant's arch mark under the factors set forth in *AMF v. Sleekcraft*
26  *Boats*, 599 F. 2d 341 (9th Cir. 1979) (*abrogated in part on other grounds by Mattell, Inc., v. Walking*
    *Mountain Products*, 353 F. 3d 792 (9th Cir. 2003).  The Court found little likelihood of confusion
27  between RSM's and Kalmbach's marks.  Dkt. # 23 , p. 12.  In opposing summary judgment, plaintiff has
    presented no facts to support a different finding now.
28  ORDER GRANTING MOTION FOR PARTIAL
    SUMMARY JUDGMENT - 7

1

2          Plaintiff's related motion to strike certain portions of defendant's reply, presented in a

3     surreply (Dkt. # 39), is GRANTED.

4          Dated this 4th day of May 2007.

5

6                                          RICARDO S. MARTINEZ
                                           UNITED STATES DISTRICT JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
      ORDER GRANTING MOTION FOR PARTIAL
      SUMMARY JUDGMENT - 8